**ST. JOE PAPER COMPANY, Plaintiff,**

v.

**MULLINS MANUFACTURING CORPO-
RATION, Defendant.**

**No. 7110.**

United States District Court,
S. D. Ohio, W. D.

April 8, 1970.

Robert G. Stachler, Taft Stettinius & Hollister, Cincinnati, Ohio, for plaintiff.

Robert H. Hinds and David W. Goldman, Paxton & Seasongood, Cincinnati, Ohio, for defendant.

## MEMORANDUM OF DECISION AND ORDER

PORTER, District Judge.

In this suit the plaintiff, St. Joe Paper Co., is suing for merchandise allegedly sold and delivered to defendant,

Mullins Manufacturing Corporation. Jurisdiction is based solely upon diversity as plaintiff has its principal place of business located and is incorporated in Florida, while the defendant is a Delaware corporation, with its principal place of business in Ohio. Pursuant to Rule 12(b) of the Fed.R.Civ.P. the defendant has moved to dismiss the cause for lack of venue under 28 U.S.C. section 1391, or, alternatively, to transfer the cause to the United States District Court for the Northern District of Ohio, Eastern Division, under 28 U.S.C. section 1404. We overrule the motion to dismiss but grant the motion to transfer. The questions involved seem important, as well as difficult, and therefore merit the following discussion.

*Dismissal for lack of venue.*

The pertinent venue provisions are 28 U.S.C. section 1391(a) and (c), which provide:

(a) A civil action wherein jurisdiction is founded only on diversity of citizenship may * * * be brought only in the judicial district where all plaintiffs or all defendants reside * * *

* * * * * *

(c) A corporation may be sued in any judicial district in which it is incorporated or licensed to do business or is doing business, and such judicial district shall be regarded as the residence of such corporation for venue purposes.

Where jurisdiction is based on diversity, as here, venue is thus proper in the district wherein the corporate plaintiff or defendant *resides*. The residence tests for a corporate defendant are listed in 1391(c). These are incorporation within the district, doing business within the district, or license to do business within the district.

Though it is not crystal clear, we have found for the purpose of this motion that the defendant herein is "licensed to do business in this district." (Defendant is not incorporated or doing business in this district.)

In this connection it is not disputed that the defendant has complied with the Ohio foreign corporation statutes and is therefore qualified in Ohio. The question which is involved is whether such a foreign corporation, which is qualified in Ohio is "licensed to do business" within this judicial district even though it is not actually doing business here. In other words, if a foreign corporation qualifies in a multidistrict State is it "licensed to do business" in all the federal districts within that State, irrespective of whether or not it is actually "doing business" in each district?

In support of their respective positions each side has cited various authorities, none of which is believed to be directly in point and therefore controlling. Some involve holdings that if a state of incorporation has more than one federal district, a domestic corporation may be sued in any district thereof on the theory that it is licensed to do business throughout the whole State. See, for example, Baksay v. Rensellear Polytech Institute, 281 F.Supp. 1007 (S.D.N.Y., 1968). Other cases hold that a domestic corporation is not a resident, for venue purposes, in all districts of a multidistrict state, but its residency is restricted to the districts in which it is actually doing business. See, for example, Jacobson v. Indianapolis Power & Light Co., 163 F.Supp. 218 (N.D.Ind., 1958).

■ We have concluded that if a foreign corporate defendant is licensed by a State, as a condition of doing business within it, that corporation is a resident, for venue purposes in all the districts within the State, regardless of whether or not it is "doing business" in all the districts.

We think this result is required by the plain meaning of section 1391(c). Also, the license, at least in this case, is derived from the State. Sections 1703.-03 and 1703.04 of the Ohio Revised Code provide for the licensing of foreign corporations as a condition for their transacting business within Ohio. Once a

foreign corporation receives a license, it is presumably licensed to do business throughout the State, including that part which covers this federal judicial district. Furthermore this interpretation seems in line with the trend towards increased flexibility in jurisdiction and venue requirements, *e. g.*, the recent rise and use of the long-arm statute and the 1948 and 1966 amendments to section 1391, 28 U.S.C.

Even if it was not established that the defendant in fact holds a license issued pursuant to sections 1703.03 and 1703.-04, Ohio Rev.Code, the result would be the same under the *Neirbo* waiver doctrine. Prior to 1948 venue, in an action against a corporate defendant, was proper only in the district of its incorporation. The defendant could, however, waive the right to object to improper venue. Neirbo Company v. Bethlehem Shipbuilding Corporation, 308 U.S. 165, 60 S.Ct. 153, 84 L.Ed. 167 (1939), held that when a foreign corporation, in conformity with a valid state statute and as a condition of doing business within it, designated an agent upon whom service of process could be made, it constituted an effective consent to be sued in the federal courts of that State.

In 1948 section 1391(c) was enacted, but according to Professor Moore, this did not eliminate the *Neirbo* waiver doctrine. Moore says of 1391(c):

> "It is reminiscent of the *Neirbo* rule in that it applies to many of the situations to which *Neirbo* applied. But subsection (c) is not bottomed on the theory of waiver. \* \* \* While the *Neirbo* rule of waiver is as valid as ever, the need to invoke it as against the defendant corporation will be infrequent, in cases where the general venue statute applies, for under the broad provisions of section 1391(c) venue will usually be properly laid. The point is that the *Neirbo* rule is in reserve, and there may be a few situations involving corporate defendants where it will still be useful." 1 Moore, Federal Practice, Para. 0.-142(5.-3) (Second Ed., 1964) at 1493.

See, for example, L'Heureux v. Central American Airways Flying Service, 209 F.Supp. 713 (D. Md. 1962); Central Rigging and Contracting Corporation of Connecticut v. Miller Transfer and Storage Co., 199 F.Supp. 40 (W.D. Pa., 1961), which demonstrate that the *Neirbo* doctrine is still alive.

■ The defendant's affidavit shows it has appointed such a statutory agent pursuant to section 1703.03 and 1703.04 of the Ohio Rev.Code, which makes such appointment a condition of doing business in this State by a foreign corporation. Under the general venue statutes of Ohio, it is possible to sue a foreign corporation in any county of the State. See Ohio Revised Code, section 2307.38. See also Ohio Revised Code, section 2703.04. We therefore conclude that consent is state-wide and the defendant can therefore be sued in any federal district court in the State. See 1 Moore, Federal Practice, para. 0.-146(7) (2d Ed., 1964) at 1917. Venue is therefore properly laid in this district.

This makes it unnecessary, except for future reference, to determine what the proper residence tests are for a corporate plaintiff. So under the heading of gratuities, we merely note that this is a matter on which there has been a divergence of opinion. Some courts and authors hold to the view that the determination should be made by the application of the criteria listed in 1391(c), which is used for a corporate defendant, *i.e.*, incorporation, doing business, or licensed to do business. See, for example, Consolidated Sun Ray Inc. v. Steel Ins. Co. of Am., 190 F.Supp. 171 (E.D.Pa., 1961), and see also Barron & Holtzoff, Vol. 1, Federal Practice & Procedure, section 80, at pp. 387–388 (1960). The contrary view is that the 1391(c) tests are inapplicable to the corporate plaintiff and its residence, for venue purposes, is only in the judicial district where it is incorporated. For example, see, United Artists Theatre Circuit Inc. v. Nationwide Theatres Investment Co., 269 F.Supp. 1020 (S.D. N.Y., 1967), and

1 Moore, Federal Practice, para. 0.042(5–6) (2d Ed., 1963) at 1501–03.

Only two circuits have specifically addressed themselves to this issue and they adhere to the latter view. See Robert E. Lee and Co. v. Veatch, 301 F.2d 434 (4 Cir., 1961), cert. den., 371 U.S. 813, 83 S.Ct. 23, 9 L.Ed.2d 55; Carter-Beveridge Drilling Co. v. Hughes, 323 F.2d 417 (5 Cir., 1963). The Sixth Circuit affirmed without comment at 382 F.2d 830 a district court decision, Dixie Portland Flour Mills, Inc. v. Dixie Feed & Seed Co., 272 F.Supp. 826 (W.D. Tenn., 1965) which also followed the latter view. The Supreme Court specifically left the question open in Abbott Laboratories v. Gardner (1967), 387 U.S. 136 at 156–157, n. 20, 87 S.Ct. 1507, 18 L. Ed.2d 681.

*Motion to transfer.*

28 U.S.C. section 1404(a) provides:

For the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought.

Defendant requests transfer of the cause to the United States District Court for the Northern District of Ohio, Eastern Division. Definitely this is a forum where the suit "might have been brought" as in that district venue would be proper and personal jurisdiction over the defendant, as well as jurisdiction of the subject matter, could be had.

▆▆ Before considering the parties' specific allegations in relation to the 1404(a) statutory standards, there are several factors which should be kept in mind. First, the decision on such a transfer motion is, at least in part, left to the sound discretion of the district court judge. See Norwood v. Kirkpatrick, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789 (1955); Philip Carey Manufacturing Co. v. Taylor, 286 F.2d 782 (6 Cir., 1961), cert. den. 366 U.S. 948, 81 S.Ct. 1903, 6 L.Ed.2d 1242. Second, the 1404(a) standards are not a mere codification of the doctrine of *forum non conveniens.* See *Norwood, supra.* ("This is not to say that the relevant factors have changed * * * but only that the discretion to be exercised is broader.") Third, plaintiff's choice of a forum is to be weighed against the factors which otherwise indicate that some other forum is more convenient and this balance of convenience must be strongly in favor of the moving party before a transfer motion will be granted. See Nicol v. Koscinski, 188 F.2d 537 (6 Cir., 1951). See also the decision of this court in Broughton v. Norfolk & Western Rwy. Co., an FELA case 310 F.Supp. 1353.

We turn now to the plaintiff's and defendant's specific allegations as to why this transfer motion should be granted or overruled. The defendant's assertions are as follows:

(1) Its principal place of business is located in the Eastern Division of the Northern District of Ohio (Salem, Ohio) and it is not engaged in business in the Southern District of Ohio (*i.e.*, maintains no bank account, employs no salesman, maintains no office, not listed in telephone book—in this district).

(2) All the purchases from plaintiff upon which this cause of action is based were made between defendant's Northern District of Ohio office and a plaintiff's Pennsylvania office. None was made with any of plaintiff's offices which may be located in this district.

(3) All the defendant's officers and employees who have knowledge of the transaction reside in the Northern District of Ohio. This point is directed more to the factor of inconvenience and expense of travel and not to difficulties in compelling attendance since they are defendant's employees and presumably there will be no need to utilize the subpoena power. The inconvenience and expense of travel consideration is entitled to more weight here than where the defendant is a transportation company or in some other capacity to easily transport the witnesses.

(4) Defendant's books and records are kept in the Northern District of Ohio. This is not too important because these are easily transported. It would be significant if, for example, removal of the records would cause an unusual hardship to the normal operation of the defendant's business or if they were too voluminous to transport. However, the defendant has not given any reason why the records cannot be brought to this court.

(5) Defendant states that he anticipates calling a number of witnesses, who are not its agents or officers, and who reside more than 150 miles from Cincinnati. The defendant has submitted a list of these witnesses, given their residences, and has stated generally the subject matter upon which they will testify. This factor is favorable to the defendant since these are nonemployees and they are outside this Court's subpoena power. The defendant also has not merely made general allegations that witnesses of this nature will be called, but has listed specific names and residences.

The plaintiff's assertions are as follows:

(1) Its right to choice of forum.

(2) That if a trial is required the testimony of witnesses that are unable or cannot be compelled to attend may be presented by deposition. However, the preference is always for live testimony if it can be obtained. Depositions are not thought to be adequate substitutes where, for example, the credibility of witnesses may be important.

(3) Although the plaintiff has not specifically mentioned it, the distance between the situs of the Court for the Northern District of Ohio, Eastern Division, and Cincinnati is not extremely great. In other words, it is not like transferring the case to some place like Kansas, where a great distance would be involved. As stated the plaintiff did not specifically raise this, but the fact is one susceptible to judicial notice.

These were the allegations made by the parties and therefore it is assumed that other factors, as, for example, multiple litigation, because other suits are pending in the Northern District, are not present.

From the foregoing we must conclude that the defendant would be seriously inconvenienced if this case is not transferred as it requests.

On the other hand, we must conclude that the plaintiff has not advanced any reason why it would be in the least way convenient for the parties or witnesses to pretry or try the action in this district. In this connection we are not overlooking the fact that the plaintiff has asserted that it has a factory and sales office in Hamilton County, Ohio. However, we have attached no significance to that for the purpose of passing on this motion because there was no assertion that such office or the employees thereof have any relationship to this action or that some of the employees would be called as witnesses.

We gave some thought of retaining the case for pretrial proceedings and reserving for decision after the completion of such proceedings whether or not to transfer as requested by the defendant. Our conclusion was that the case should be pretried in the district in which it will be tried.

(6) To conclude, we have weighed the plaintiff's choice of forum against the factors which indicate that some other forum is more convenient and found the balance of convenience strongly in favor of the moving party. See Nicol v. Koscinski, *supra*. To state the decision in the language of the section (1404(a)), under which the motion is made, we conclude that for the convenience of the parties and witnesses and in the interests of justice, the case should be transferred and it is therefore ordered transferred to the Northern District of Ohio, Eastern Division, at Youngstown, Ohio.